**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **No. 04-20111-02-KHV** |
| MANUEL SEGURA-RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On August 19, 2004, a grand jury returned a three-count indictment which, in part, charged Manuel Segura-Ramirez with conspiracy to possess more than five kilograms of cocaine with intent to distribute and knowingly possessing more than five kilograms of cocaine with intent to distribute. Police discovered the cocaine during the search of a truck which defendant was driving on August 11, 2004. This matter is before the Court on defendant's Motion To Suppress Evidence (Doc. #30) filed November 1, 2004. On December 20, 2004, the Court held an evidentiary hearing. For reasons set forth below, defendant's motion is sustained.

**Factual Background**

Based on the testimony and exhibits at the hearing on defendant's motion, the Court finds the following facts:

At 11:30 a.m. on August 11, 2004, in a construction zone on Interstate 35 in Osage County, Kansas, Trooper Brent Hogelin of the Kansas Highway Patrol saw a blue pickup truck following too close to the car in front of it. Trooper Hogelin followed the truck. Shortly after the construction zone, the truck pulled into the left lane without signaling. The truck driver then activated the left turn signal and remained

in the left lane with the turn signal activated.  Trooper Hogelin activated his emergency lights, along with the

patrol car's audio and video equipment.[1]

At 11:33 a.m., the truck pulled over.  Trooper Hogelin opened the passenger door of the truck,

leaned into the truck and spoke to defendant who was in the driver's seat and was the only occupant of

the vehicle.  Defendant primarily speaks Spanish.  Trooper Hogelin speaks very little Spanish, but

defendant was able to comply with Trooper Hogelin's requests.  Defendant gave Trooper Hogelin a visa,

a Mexican driver's license and proof of insurance which was effective August 10 through 14, 2004.  The

truck was registered to another person in Chihuahua, Mexico.

At 11:36 a.m., Trooper Hogelin returned to his patrol car.  At 11:38 a.m., Trooper Hogelin asked

dispatch if someone who spoke Spanish was available.  Investigator Wallace Long of the Osage County

Sheriff's Office, who speaks limited Spanish, radioed that he would assist.  Trooper Hogelin ran a record

check on defendant and prepared a written warning.  At 11:42 a.m., Investigator Long arrived.  Trooper

Hogelin told Long that defendant only had insurance for four days and that the truck was not in his name.

Trooper Hogelin and Long stood behind the truck and motioned for defendant to get out of the truck.  At

11:43 a.m., defendant walked to the back of the truck, where Trooper Hogelin handed him his paperwork

and a written warning.  Long asked defendant several questions, such as where he was going, in Spanish.

Long told Trooper Hogelin that defendant was going to pick up some clothes.  Long then told defendant

"everything was fine" and said "adios."  Defendant said "gracias, gracias" as he shook hands with Long and

then said "senor, senor" to Trooper Hogelin, who was walking back to his car.  Defendant then said

---

[1]        The Court admitted a copy of the video as Exhibit 1 at the hearing on defendant's motion
to suppress.

"gracias" as he shook hands with Trooper Hogelin.  Long remained near defendant as defendant shook

Trooper Hogelin's hand.  At 11:44 a.m., before defendant could turn around to walk back to the truck,

Long motioned for him to approach and asked in Spanish whether he would answer more questions.

Defendant agreed and shortly thereafter, he told Long that the officers could search the truck.

At 11:45 a.m., officers started the search.  They noticed that the gas tank, radiator and transfer

case appeared to be recently tooled or tampered with.  They knew that such markings are common when

drugs are concealed.  At 11:54 a.m., Trooper Hogelin pulled the truck forward, onto the grass, so that the

officers could search further.  The officers used a fiber optic scope to search the gas tank, but they found

nothing unusual.  The officers decided that it would be easier to conduct a more extensive search if they

went to a nearby service station.  Long told defendant to follow him to a service station.

At 12:10 p.m., defendant and the two officers left for Lebo Garage in Beto Junction, Kansas.[2]  On

the way to the service station, Long led the way in his patrol car.  Defendant followed in the truck, and

Trooper Hogelin followed defendant in his patrol car.  At 12:23 p.m., the three arrived at Lebo Garage.

At least four officers were present when defendant got out of the truck.  They escorted defendant to a small

room and asked him to sign a Spanish-language consent to search.  Long started the search, however,

before defendant signed the written consent.[3]  The officers found cocaine hidden in the transfer case and

placed defendant under arrest.

Defendant seeks to suppress the evidence found in the truck because (1) he did not voluntarily

---

[2]       Beto Junction is located at the junction of U.S. Highway 75 and Interstate 35, approximately nine miles west of where defendant was stopped.

[3]       The Court admitted a copy of the consent form as Exhibit 2 at the hearing on the motion to suppress.

consent to additional questioning by Long, (2) he did not voluntarily consent to a search of the truck, and (3) the search of the truck exceeded the scope of his consent.

**Analysis**

**I.      Consent To Additional Questioning**

Defendant does not challenge the initial decision to pull over his vehicle, but he claims that the "second stop to ask for consent was without any legal basis."[4]  Defendant's <u>Brief In Support Of Motion To Suppress Evidence</u> (Doc. #31) at 1-2.  The officers did not actually stop defendant's vehicle a second time, but the original stop was lengthened when defendant continued to talk with Long.

After requesting relevant documentation, running a computer check and issuing a citation, an officer must allow the driver to proceed without further delay or questioning unless (1) the officer has a reasonable and articulable suspicion that the driver is engaged in illegal activity or (2) the driver voluntarily consents to additional questioning.  <u>United States v. Sandoval</u>, 29 F.3d 537, 540 (10th Cir. 1994).  The government maintains that defendant consented to additional questioning.  Defendant claims that his consent was not voluntary.

When a defendant alleges that he did not voluntarily consent to additional questioning, the government bears the burden of proving that consent was in fact voluntary.  <u>United States v. Roman-Roman</u>, 2004 WL 2786619, at *2 (10th Cir. Dec. 6, 2004) (citing <u>United States v. Sanchez-Valderuten</u>, 11 F.3d 985, 990 (10th Cir. 1993)).  Whether consent is freely and voluntarily given

---

[4]      To the extent defendant challenges the initial decision to pull his truck over, the Court finds that Trooper Hogelin had probable cause based on his observation that the truck was following too closely, that the left turn signal was not activated until after the truck had changed lanes, and that it remained activated for a short time thereafter.

- 4 -

is a question of fact determined from the totality of the circumstances.  United States v. Pena, 143 F.3d 1363, 1366 (10th Cir.), cert. denied, 525 U.S. 903 (1998).  The government must show that the consent was unequivocal, specific, and freely given without duress or coercion.  United States v. Angulo-Fernandez, 53 F.3d 1177, 1180 (10th Cir. 1995).

A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority.  United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000).  Returning a driver's documentation may not end the detention where there is "a coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled."  United States v. Taverna, 348 F.3d 873, 877-78 (10th Cir. 2003) (quoting United States v. Turner, 928 F.2d 956, 959 (10th Cir.), cert. denied, 502 U.S. 881 (1991)).  Whether an individual consents to further questioning is based on the totality of the circumstances.  United States v. Manjarrez, 348 F.3d 881, 885 (10th Cir. 2003), cert. denied, 124 S. Ct. 1622 (2004).  An encounter is consensual when a reasonable person would believe he was free to leave or disregard the officer's request for information.  Id. at 885-86.  A consensual encounter is a voluntary exchange between the officer and the citizen in which the officer may ask non-coercive questions.  West, 219 F.3d at 1176.  For the encounter to be consensual, a police officer does not have to inform the citizen that he is free to disregard further questioning.  Id.

Whether additional questioning by Long was part of a consensual encounter is a close call.  The officers did not terminate the investigative detention when Trooper Hogelin handed defendant his paperwork because Long asked defendant questions such as where he was going.  Long did tell defendant

"everything was fine" and "adios." After defendant shook hands with Long and Trooper Hogelin, however, Long immediately motioned for defendant to come closer and asked if he could ask more questions. Defendant was between his truck and a patrol car, and he was not allowed to walk back toward his truck after he received his paperwork from Trooper Hogelin and shook hands with the officers. Approximately five seconds elapsed from the moment Long told defendant "adios" until Long asked defendant whether he would answer more questions. During that short period, Long and Trooper Hogelin were standing close to defendant and shook hands with him. In these circumstances, a reasonable person would believe that the investigate detention never ended and he was not free to leave or to disregard the officer's request for information. Cf. United States v. Smith, No. 02-40137-JAR, 2003 WL 22348795, at *3 (D. Kan. Oct. 8, 2003) (officer asked for permission to ask further questions after defendant put car in drive gear). In sum, the government has not satisfied its burden to show that defendant unequivocally, specifically and freely consented to additional questioning by Long. See Roman-Roman, 2004 WL 2786619, at *2; Sanchez-Valderuten, 11 F.3d at 990.

## II.    Consent To Roadside Search

Defendant next argues that his consent to search the truck was not voluntary. The government again bears the burden to show that defendant's consent was voluntary. See United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996). To establish that defendant's consent was voluntary, the government must (1) "proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" and (2) "prove that this consent was given without implied or express duress or coercion." Id. at 719 (quoting United States v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1996)). Consent to search may be voluntary even though the consenting party is being detained at the time consent is given.

United States v. Doyle, 129 F.3d 1372, 1377 (10th Cir. 1997).  Whether a consent to search is voluntary is a question of fact to be determined from the totality of the circumstances.  See United States v. Soto, 988 F.2d 1548, 1557 (10th Cir. 1993).  Relevant factors include "the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station;  interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public."  United States v. Hill, 199 F.3d 1143, 1148 (10th Cir. 1999) (in context of consensual encounter); see Soto, 988 F.2d at 1557-58 (evaluating similar factors in context of investigative detention).  No one factor is dispositive.  See id. at 1557.

Whether defendant's initial consent to search was voluntary is closely intertwined with the question whether defendant's consent to additional questioning was voluntary.  Accordingly, the Court must consider whether defendant's initial consent to search was a fruit of his unlawful detention by officers.  See United States v. Carter, 360 F.3d 1235, 1243 (10th Cir. 2004).  To successfully suppress evidence as fruit of an unlawful detention, defendant must establish that the detention violated his Fourth Amendment rights and demonstrate a factual nexus between the illegality and the challenged evidence.  United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000).  To establish a factual nexus, defendant must adduce evidence that the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct.  Id.; United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir. 2001).  Defendant has shown that absent the unlawful detention by Long, the officers would not have obtained his consent to search or found the cocaine in the transfer case of the truck.

Because defendant has met this initial burden, the government must prove that "the evidence sought to be suppressed is not fruit of the poisonous tree, either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." Nava-Ramirez, 210 F.3d at 1131 (quotation marks and citations omitted). The question is whether the evidence sought to be suppressed was obtained by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Brown v. Illinois, 422 U.S. 590, 598-99 (1975).

Because defendant consented to a search of the truck less than one minute after he consented to additional questioning (which the Court found above was not voluntary), the Court finds that the government has not satisfied its burden to show that defendant's consent to search was unequivocally, specifically and freely given. Almost immediately after Long obtained consent to ask defendant additional questions, he asked and obtained consent to search the truck. Defendant's consent to search was not sufficiently attenuated from his unlawful detention. The Court therefore suppresses the evidence obtained as a result of the search.

## III.    Consent To Search At Service Station

Even if the Court assumes that defendant's verbal consent to search the truck was valid, the Court would suppress the evidence obtained from the truck at Lebo Garage because defendant never voluntarily agreed to a search at a secondary location. The scope of a search is generally defined by its expressed object. Florida v. Jimeno, 500 U.S. 248, 251 (1991). The scope of a consent to search is limited by the breadth of the consent given. United States v. Elliott, 107 F.3d 810, 814-15 (10th Cir. 1997); United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990), cert. denied, 501 U.S. 1207 (1991). Whether

a search exceeds the scope and duration of consent is a question of fact.  See Jimeno, 500 U.S. at 251.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of

'objective' reasonableness--what would the typical reasonable person have understood by the exchange

between the officer and the suspect [to be the scope and duration of his consent]?"  Id.  A general grant

of permission to search an automobile typically extends to the entire car, absent an objection or an explicit

limitation by the grantee.  United States v. Rosborough, 366 F.3d 1145, 1150 (10th Cir. 2004); United

States v. Deases, 918 F.2d 118, 122 (10th Cir. 1990), cert. denied, 501 U.S. 1233 (1991).  Failure to

object to a search is an indication the search is within the scope of consent.  See Roman-Roman, 2004 WL

2786619, at *3; Pena, 143 F.3d at 1368.  Where a defendant's consent is predicated explicitly on an

understanding that the search will be brief, an extended detention sometimes exceeds the scope of the

consent.  Rosborough, 366 F.3d at 1150; United States v. Wald, 216 F.3d 1222, 1228 (10th Cir. 2000).

     If defendant's initial consent to search had been voluntary – which it was not – officers could have

lawfully conducted the extensive roadside search which lasted 25 minutes.  The government, however, has

not shown that defendant voluntarily consented to an additional search of his car at a service station some

nine miles and 15 minutes away.  After the officers conducted the initial search of defendant's vehicle,

including a search of the gas tank with a fiber optic scope, Long *told* defendant to follow him to a garage.

Cf. Smith, 2003 WL 22348795, at *4 (officer asked defendant if he would follow him to Highway Patrol

garage and defendant agreed).  Although defendant shook his head yes, his consent was not voluntary

under the circumstances.  Based on Long's command, defendant did not appear to have the right to

withhold consent to a secondary search.  Officers never told defendant that he was free to go.  See United

States v. Recalde, 761 F.2d 1448, 1453-54 (10th Cir. 1985).  Long gave defendant a command, not a

choice.  Long testified that when they were traveling to the garage, defendant was "detained" and was not free to go.  See id.  Although Trooper Hogelin had returned defendant's paperwork, defendant – a citizen of Mexico who had been in the United States some two days – could have reasonably felt constrained and unable to simply terminate his confrontation with the police.  See id.

The government does not argue that defendant's initial consent included consent to search the truck at Lebo Garage, and Long could not have reasonably interpreted defendant's initial consent to include a consent to search at a secondary location some nine miles and 15 minutes away.  Except in unusual circumstances, a consent to search is given upon the understanding that the search will be conducted forthwith and that only a single search will be made.  3 Wayne R. LaFave, Search and Seizure, § 8.1(c), at 629 (3d ed. 1996).  As explained above, the standard for measuring the scope of an individual's consent is what a typical reasonable person would have understood by the exchange between the officer and the suspect to be the scope and duration of the consent.  See Jimeno, 500 U.S. at 251.  Here, the scope of consent included a search for narcotics which could include partial disassembly of the truck if defendant did not object.[5]  Although defendant's initial consent could be construed as authorizing an extensive roadside search for narcotics, Long could not reasonably construe that consent as also authorizing a search

---

        [5]        See Roman-Roman, 2004 WL 2786619, at *3 (general and unrestricted consent to search of vehicle includes entire vehicle and every place inside vehicle where illegal drugs or contraband could be stored or hidden, unless individual subsequently objects); United States v. Ramstad, 308 F.3d 1139, 1146-47 (10th Cir. 2002) (search for drugs or contraband implies that officer could look wherever drugs might be hidden); United States v. Gigley, 213 F.3d 509, 513, 515 (10th Cir. 2000) (consent to "look in" automobile included authorization to look under rear seat of van); McRae, 81 F.3d at 1537-38 (officer's request to search trunk of car permitted lifting of carpet in trunk); United States v. Santurio, 29 F.3d 550, 553 (10th Cir. 1994) (unscrewing strip holding down interior carpet and removing carpet); Pena, 920 F.2d at 1512, 1515 (removing rear quarter panel vent and cardboard found beneath); United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986) (where defendant consented generally to search of car and then stood by while officer searched trunk, under seats, under carpet, in luggage, in glove box, and under left rear panel of car, officer's search of left rear panel was within scope of consent).

and partial disassembly of the truck at a service station some nine miles and 15 minutes away.[6]  See United States v. Ibarra, 731 F. Supp. 1037, 1040 (D. Wyo. 1990) (consent to first search on highway did not imply consent to search vehicle after officers unlawfully seized it), aff'd, 955 f.2d 1405 (10th Cir. 1992). Cf. United States v. Luna-Gonzales, 90 Fed. Appx. 366, 369 n.1 (10th Cir. Mar. 15, 2004) (officer asked defendant if he would follow him elsewhere so that he could look further at car and defendant renewed consent).

## IV.    Probable Cause For Search At Service Station

Although defendant did not voluntarily consent to the search of his truck at Lebo Garage, the search is nevertheless valid if the government can show that officers had probable cause to arrest defendant when they ordered him to drive his truck to Lebo Garage.[7]  See Soto, 988 F.2d at 1558-59 (because officer had probable cause to arrest, court need not determine whether defendant consented to transport vehicle to nearby service station); United States v. Lopez, 777 F.2d 543, 551 (10th Cir. 1985) (officer had probable

---

[6]       The government attempts to rely on the consent form which defendant signed at Lebo Garage, but defendant's written consent was not voluntary under the circumstances.  As explained above, the Court determines the voluntariness of consent from the totality of the circumstances and the government bears the burden of proof, without any presumption.  United States v. Price, 925 F.2d 1268, 1271 (10th Cir. 1991).  The government must (1) "proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" and (2) "prove that this consent was given without implied or express duress or coercion."  McRae, 81 F.3d at 1537.  The government has not satisfied its burden. Defendant traveled to Lebo Garage sandwiched between two patrol cars.  When defendant arrived, at least four officers were present.  Officers escorted defendant to a small room off the garage where they asked him to sign a consent form while Long started searching the vehicle.  Under the totality of circumstances, defendant's written consent was obtained with implied duress and coercion.  Moreover, because defendant signed the form almost immediately after he arrived at Lebo Garage, his written consent was not sufficiently attenuated from his unlawful detention to be voluntary.  See Recalde, 761 F.2d at 1459 (consent to search form at police station not sufficiently free of duress and coercion to remove taint of illegal detention).

[7]       This section assumes that defendant's initial consent to search the truck was voluntary.  As explained, however, defendant's initial consent was tainted by and was not sufficiently attenuated from his unlawful detention.

cause to search vehicle at secondary location because he smelled ether-like substance which he associated with bulk cocaine); United States v. Gonzalez, 763 F.2d 1127, 1131 (10th Cir. 1985) (if defendant refused to consent to search, officer had choice of arresting defendant – if probable cause existed – or letting him go). The line between a brief detention and a full-fledged arrest is crossed when police forcibly remove a person from a place in which he is entitled to be and transport him to a police station. See Hayes v. Florida, 470 U.S. 811 (1985). When Long ordered defendant to follow him to a nearby garage, the stop effectively rose to the level of an arrest. See Gonzalez, 763 F.2d at 1132 (order to submit to search at secondary location so intrusive that it effectively is arrest); Recalde, 761 F.2d at 1456 (absent probable cause or valid consent, transportation to police station indistinguishable from traditional arrest); see also United States v. Shareef, 100 F.3d 1491, 1508 (10th Cir. 1996) (to transport defendant to police station, officer must have probable cause to believe defendant committed a crime); United States v. Aispuro-Lopez, No. 02-40111-SAC, 2003 WL 3356071, at *4 (D. Kan. Jan. 7, 2003) (instructing defendant to follow officer to sheriff's office effectively arrest).

The officers did not develop probable cause to arrest defendant until after they had transported him to Lebo Garage. Before officers searched the truck at the service station, they only had reasonable suspicion of criminal activity. Defendant was driving an old truck, he produced an insurance certificate which was valid for only four days, he had a small amount of luggage, he stated that the purpose of his trip was to pick up clothes, and officers found several areas of the truck which had been recently tooled or tampered with. Long himself testified that based on these facts, he had "reasonable suspicion" that he should further investigate the contents of the truck. Neither Long nor Trooper Hogelin testified that they thought that they had probable cause to arrest defendant before going to Lebo Garage. The Court likewise

finds that before officers searched the truck at Lebo Garage, they only had reasonable suspicion of criminal activity.[8]  Accordingly, the Court cannot uphold the search of the truck at the service station based on probable cause.[9]

**IT IS THEREFORE ORDERED** that defendant's <u>Motion To Suppress Evidence</u> (Doc. #30) filed November 1, 2004 be and hereby is **SUSTAINED**.

Dated this 14th day of January, 2005, at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[8]       In some cases, evidence of a secret compartment in a vehicle can justify an arrest, <u>see</u> <u>Soto</u>, 988 F.2d at 1558, but Trooper Hogelin and Long only had evidence that some areas of the car had been recently worked on.

[9]       The government has not argued or shown that exigent circumstances permitted Long to order defendant to drive to a nearby service station.  Long testified that in part, he ordered defendant to drive to Lebo Garage because it was not safe to conduct a roadside inspection for a lengthy period of time. Trooper Hogelin and Long had already addressed this concern, at least in part, by moving the truck onto the grass.  The officers were comfortable enough with the roadside environs to conduct a search of some 25 minutes.  Long's alleged concern for officer safety is insufficient to show exigent circumstances.  <u>See</u> <u>Gonzalez</u>, 763 F.2d at 1132 (lone officer, two suspects, nighttime not exigent circumstances justifying forced accompaniment to police station).